Foltz v. Kerlin.

Filed Jan. 27, 1886.

----

No. 12,343.

## FOLTZ v. KERLIN.

TOWNSHIP TRUSTEE.—*Lucrative Office.*—The office of township trustee is a lucrative office within the meaning of the State Constitution.

OFFICE AND OFFICER.—*Postmaster.*—*Federal Officer.*—Postmasters are Federal officers under the provisions of the State Constitution.

SAME. — *Eligibility.* — *Vacation of Office.*—*Federal and State Officers.*—The

general rule is that where a man accepts an office held under the State, he vacates another held under the same sovereignty; but where a Federal office is held at the time of the acceptance of an office created by State laws, the former is not vacated by such acceptance. The Federal office may be surrendered and the State office retained, but if the incumbent elects to hold the former, he must surrender the latter.

From the White Circuit Court.

*T. F. Palmer* and *M. M. Sill*, for appellant.

*A. W. Reynolds, E. B. Sellers* and *D. D. Dale*, for appellee.

ELLIOTT, J.—John G. Kerlin, the appellee, received a majority of the votes cast at an election held on the 7th day of April, 1884, for the office of trustee of Princeton township. The term of the office to which he was elected began on the 14th day of April, 1884, and on that day he entered into the office. At the time he was elected, he was the postmaster at the town of Seafield in that township, and was receiving, as such officer, a compensation of more than $200 per annum; he did not vacate the office of postmaster, but, on the contrary, he retained it, and was holding it at the time this action was instituted. The facts of which we have given a synopsis are stated formally and at length in the appellant's petition, to which the trial court sustained a demurrer.

Our Constitution contains a provision prohibiting a citizen from holding two lucrative offices, either Federal or State, at the same time. ' The provision to which we refer reads thus: "No person holding a lucrative office or appointment under the United States, or under this State, shall be eligible to a seat in the General Assembly; nor shall any person hold more than one lucrative office at the same time, except as by this Constitution expressly permitted: *Provided,* That officers in the militia to which there is attached no annual salary, and the office of deputy postmaster where the compensation does not exceed ninety dollars per annum, shall not be deemed lucrative; and *Provided, also,* That counties containing less than one thousand polls may confer the office of clerk,

recorder, and auditor, or any two of said offices, upon the same person." There is in our minds no doubt that the Constitution applies to all lucrative National and State offices of whatsoever class, except deputy postmasters whose compensation does not exceed ninety dollars per annum, since any other ruling would render nugatory the plain words of the instrument and make the provision respecting deputy postmasters either meaningless or absurd.

It is quite evident that the framers of the Constitution intended that postmasters should be regarded as Federal officers, but, on principle, independent of the language of that instrument, there can be no contrariety of opinion upon this subject. They are officers within the definition given by the authorities. "An office," says the Supreme Court of the United States, "is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties." *United States* v. *Hartwell,* 6 Wall. 385.

In *Henly* v. *Mayor, etc.,* 5 Bing. 91, BEST, C. J., said: "In my opinion, every one who is appointed to discharge a public duty, and receives a compensation in whatever shape, whether from the crown or otherwise, is constituted a public officer." In various forms this definition is given in many cases. *Case of Wood,* 2 Cowen, 29, note; *People* v. *Common Council,* 77 N. Y. 503 (33 Am. R. 659). But there are cases directly declaring that postmasters are public officers. *Rodman* v. *Harcourt,* 4 B. Mon. 224; *Hoglan* v. *Carpenter,* 4 Bush, 89; *Patterson* v. *Miller,* 2 Met. (Ky.) 493; High Extra. L. Rem., section 95.

In all the decisions upon constitutional provisions similar to ours that we have been able to find, it is laid down for law that one who holds a Federal office, great or small, to which compensation is attached, can not at the same time be lawfully the incumbent of a lucrative office under the statutes of the State. *In re Corliss,* 11 R. I. 638 (23 Am. R. 538);

*State* v. *De Gress*, 53 Texas, 387; *Davenport* v. *Mayor*, 67 N. Y. 456; *State* v. *Clarke*, 3 Nev. 566.

If the office of township trustee is a lucrative one within the meaning of the Constitution, the appellee had no right in it while holding the Federal office of postmaster, and that it is a lucrative office is settled by our decisions. *Dailey* v. *State, ex rel.*, 8 Blackf. 329; *Creighton* v. *Piper*, 14 Ind. 182; *State, ex rel.*, v. *Kirk*, 44 Ind. 401 (15 Am. R. 239). Both offices the appellee could not hold, and from one or the other he must be ousted.

The State courts have authority to expel him from the office of township trustee, but not from the office held by appointment from the Federal government. Our courts can not decide upon the right of an appointee of the National government, but they can decide upon the right of one asserting a title to an office under the laws of the State. Within the powers delegated to it the Federal government is supreme, and this necessarily carries the authority to determine upon the qualification of its officers and their right to hold office. *Rodman* v. *Harcourt, supra; Hoglan* v. *Carpenter, supra.* As our courts have no authority to expel an incumbent from a Federal office, they are powerless to control a man who attempts to defy our Constitution by holding both a Federal and a State office, unless they have authority to expel him from an office held under the laws of the State, notwithstanding the fact that he may have entered into the State office last. We entertain no doubt that our courts do possess power to oust a man from a State office who undertakes to hold it in defiance of our Constitution. This doctrine is ably and decisively declared in the case last cited. If a man persists in clinging to a Federal office, our courts can, and will, compel him to loosen his hold upon an office created by the State. If he perseveres in his effort to violate one fundamental law by holding two offices, the sure penalty will be the loss of that over which the State has jurisdiction. He may, if he will, surrender the Federal office and retain

that created by the State, but he can not retain both in defiance of the Constitution. If he elects to hold the Federal office he must surrender the State office. The courts will coerce obedience to the Constitution, and will not permit men to hold office in violation of its provisions.

It is, doubtless, the general rule, that where a man accepts an office held under the State, he vacates another held under the same sovereignty. *Dailey* v. *State, ex rel., supra; Lucas* v. *Shepherd,* 16 Ind. 368; *Creighton* v. *Piper, supra; Howard* v. *Shoemaker,* 35 Ind. 111; *Cotton* v. *Phillips,* 56 N. H. 220; *Milward* v. *Thatcher,* 2 T. R. 81; *People* v. *Hanifan,* 96 Ill. 420; *Stubbs* v. *Lee,* 64 Maine, 195; *Shell* v. *Cousins,* 77 Va. 328.

But the reason of the rule fails when applied to offices held under different sovereignties, and where the reason of the rule fails, so, also, does the rule. There is reason for the rule where the offices emanate from the same government, but none where the offices are created by different governments. The National law neither creates nor governs a State office; neither inducts the officer into office nor expels him from it; neither fixes his qualifications nor prescribes his disabilities. On the other hand, the State law exerts no dominion over the Federal officer as an officer, neither prescribes his qualifications nor declares his disabilities, and it is, therefore, logically inconceivable that the acceptance of an office existing under a State law vacates an office existing under a National law. Where, as here, a man elected to a State office persists in retaining a Federal office, actually remains in it, enjoying its emoluments and discharging its duties, he does not, in legal contemplation, and certainly not in fact, vacate it by entering into an office existing under the laws of the State, and for this plain reason, the laws of the State do not operate upon Federal offices. Our laws do not extend to offices created by the General government, and no act that an officer acting under our laws can do, can vacate an office upon which our laws

do not operate. Nothing done under our laws can operate where our laws are without effect.

We must hold that a man can be expelled from a State office who persists in holding one given him by the Federal government, or we must concede that the courts of Indiana can not control a citizen who assumes to hold office in direct violation of the Constitution. This concession will not be made.

Judgment reversed.

Filed Jan. 27, 1886.

### ON PETITION FOR A REHEARING.

ELLIOTT, J.—In the brief on the petition for a rehearing appellee's counsel shift the ground upon which they place their cause, and we might, under settled rules, decline to consider the new points made upon the petition for a rehearing, but as the case must go back for further proceedings, we have thought it proper to discuss the questions now presented.

What we decided in the original opinion is, that the complaint makes a *prima facie* case for the contestant, that is, it shows the ineligibility of the appellee to enter into the office of township trustee at the time his term of office began. Whether he can successfully defeat that case was not the question before us, and, of course, no decision upon that question was made. It may be that the appellee can show by answer that he removed the cause of his ineligibility by resigning the office of postmaster, but that question can not now be decided, for it can not arise until there is an answer presenting it.

The complaint demurred to by the appellee shows that he was not eligible to enter into the office to which he was elected, and that he claims the office, thus showing a *prima facie* cause of action, for we think it quite clear that a voter may challenge the right of an ineligible person to hold office. The statute expressly so provides.

The cases cited by counsel are not at all in point, except, perhaps, that of *Searcy* v. *Grow*, 15 Cal. 117, which is very

The First Nat'l Bank of Mauch Chunk *v.* The U. S. Encaustic Tile Co. *et al.*

strongly against the appellee, for it goes much further than we have done, as it holds that an incumbent of the office of postmaster is ineligible to be voted for at the election. We are simply required to decide that if a person chosen to office is shown to be ineligible at the time when he ought to be inducted into office, such a case is made as at least drives him to answer.

Petition overruled.

Filed March 6, 1886.